1
2
3
4
5
6
7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 CYNTHIA GONZALES,                          No.  2:24-CV-0958-DMC

12         Plaintiff,

13     v.                                     MEMORANDUM OPINION AND ORDER

14 COMMISSIONER OF SOCIAL
   SECURITY,
15
           Defendant.
16

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19 review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20 Pursuant to the written consent of all parties, ECF Nos. 7 and 8, this case is before the

21 undersigned as the presiding judge for all purposes, Including entry of final judgment.  See 28

22 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 11 and

23 13.

24          The Court reviews the Commissioner's final decision to determine whether it is:

25 (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26 whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27 more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1    a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2    including both the evidence that supports and detracts from the Commissioner's conclusion, must

3    be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4    v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9    Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13   Cir. 1988).

14            For the reasons discussed below, the matter will be remanded for further

15   proceedings.

16

17                    **I.  THE DISABILITY EVALUATION PROCESS**

18            To achieve uniformity of decisions, the Commissioner employs a five-step

19   sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

20   404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

21            Step 1     Determination whether the claimant is engaged in
22                       substantial gainful activity; if so, the claimant is presumed
                         not disabled and the claim is denied;

23            Step 2     If the claimant is not engaged in substantial gainful activity,
24                       determination whether the claimant has a severe
                         impairment; if not, the claimant is presumed not disabled
25                       and the claim is denied;

26            Step 3     If the claimant has one or more severe impairments,
                         determination whether any such severe impairment meets
27                       or medically equals an impairment listed in the regulations;
                         if the claimant has such an impairment, the claimant is
                         presumed disabled and the claim is granted;
28

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

1

## II.  THE COMMISSIONER'S FINDINGS

2    Plaintiff applied for social security benefits on May 15, 2021.  <u>See</u> CAR 17.[1]  In

3    the application, Plaintiff claims disability began on June 22, 2019.  <u>See id.</u>  Plaintiff's claim was

4    initially denied.  Following denial of reconsideration, Plaintiff requested an administrative

5    hearing, which was held on February 23, 2023, before Administrative Law Judge (ALJ) Vincent

6    Misenti.  In a May 3, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the

7    following relevant findings:

8        1.    The claimant has the following severe impairment(s): cervical and
9               lumbar degenerative disc disease; right knee and left ankle
     misalignment; degenerative joint disease in both knees; and
10              obesity;

11       2.    The claimant does not have an impairment or combination of
     impairments that meets or medically equals an impairment listed in
12              the regulations;

13       3.    The claimant has the following residual functional capacity: the
     claimant can perform light work except: right (dominant) handling
14              is limited to frequent climbing ramps and stairs, kneeling,
     crouching, and crawling are limited to occasional; balancing and
15              stooping are limited to frequent; no climbing ladders and scaffolds;
     no work around unprotected heights; and no concentrated exposure
16              to moving mechanical parts;

17       4.    Considering the claimant's age, education, work experience,
     residual functional capacity, and vocational expert testimony, the
18              claimant can perform past relevant work as a customer complaint
     clerk as well as other jobs which exist in significant numbers in the
19              national economy.

20   <u>See id.</u> at 19-33.

21   After the Appeals Council declined review on February 15, 2024, this appeal followed.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   _____

28       [1]    Citations are to the Certified Administrative Record (CAR) lodged on May 22, 2024, ECF No. 10.

1

**III.  DISCUSSION**

2          In her opening brief, Plaintiff argues: (1) the ALJ erred in relying on the opinions

3   of the non-examining state agency medical consultant, Dr. Ruo, who did not review the entire

4   medical record; and (2) the ALJ erred in evaluating Plaintiff's subjective statements and

5   testimony.  See ECF No. 11.

6          **A.      Dr. Ruo's Medical Opinions**

7          "The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue,

8   533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

9   explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

10  2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

11  opinion over another.  See id.

12         Under the regulations, only "licensed physicians and certain qualified specialists"

13  are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

14  674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

15  an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

16  rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144,

17  1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

18  substantial evidence when the opinions are consistent with independent clinical findings or other

19  evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

20  workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

21  Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

22  also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

23  Opinions from "other sources" such as nurse practitioners, physician assistants, and social

24  workers may be discounted provided the ALJ provides reasons germane to each source for doing

25  so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

26  F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

27  when opinions from "other sources" may be considered acceptable medical opinions).

28  / / /

5

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors."  See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ evaluated the medical opinions of record.  See CAR 28-30. Specifically, the ALJ considered opinions from the following sources: (1) Daniel Walter, Psy.D., LCP, a state agency mental health consultant; (2) Joseph Leizer, Ph.D., a state agency mental health consultant; (3) T. Bawa, M.D. a state agency medical consultant; and (4) Y. Ruo, a state agency medical consultant.  See id.  Regarding Plaintiff's mental limitations, the ALJ found the opinions of Drs. Walter and Leizer persuasive.  See id. at 28.  Regarding Plaintiff's physical limitations, the ALJ found the opinions of Drs. Bawa and Ruo to be "generally persuasive," except the ALJ determined that Dr. Ruo's opinion, which was later in time, to be "more persuasive" than Dr. Bawa's earlier opinion.  See id. at 29.

As to Dr. Ruo's opinions, the ALJ stated as follows:

> On December 8, 2021, T. Bawa, M.D., a state agency medical consultant, opined that the claimant was capable of light exertional work, except occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; frequently balancing; frequently stooping; occasionally kneeling; occasionally crouching; occasionally crawling; and occasionally handling with the right upper extremity. Dr. Bawa did not provide any environmental limitations. (See e.g., Exhibit(s) 1A). On April 26, 2022, Y. Ruo, M.D., a state agency medical consultant, essentially affirmed the prior opinion, except Dr. Ruo added an environmental limitation of avoid concentrated exposure to hazards (See e.g., Exhibit(s) 3A).
>
> The undersigned finds the above opinions to be generally persuasive, except Dr. Ruo's later opinion is more persuasive than Dr. Bawa's earlier opinion. Both consultants supported their opinions with a review of the broader file as it existed at the time, and they both referenced findings from the medical evidence, but Dr. Ruo had more medical evidence available for review. In reviewing the full file, the evidence reveals that the claimant recovered well (or was on a path to recovering well) from the surgeries related to her musculoskeletal/neurological issues. Her wheelchair use appeared to be more associated with surgery recovery, rather than a long-term need for an assistive device. Her latest surgeries,

which involved cervical and lumbar fusions in September 2022 and lumbar wound infection debridement in October 2022, were less than [one] year ago, and while she is still recovering from them, the evidence does not suggest a prolonged recovery period; certainly not 12 consecutive months or more. Indeed, during an examination in November 2022, it was suggested that the claimant's pain medication was adequately controlling her pain. Regarding the alleged right knee and left ankle misalignment, the claimant acknowledged during the hearing that her left ankle responded well to surgery and her alleged need for further surgery to correct an alignment problem is highly speculative. X-rays of the left foot/ankle showed excellent healing from surgery in October 2021, and further improvement was expected in time. Although she has a valgus deformity of the right knee, musculoskeletal range of motion and strength in that area were relatively normal overall, though there was indication of a need for a right knee replacement. The claimant further testified that she does not have any problems with her right ankle. Given the above, the opined light exertional limitation and opined postural limitations appear adequate. There is no reason to indicate that the claimant could not do light work after recovering from her recent surgeries over the course of the next few months. The later-opined environmental limitations are also needed to serve as safety precautions due to the claimant's use of medication. Nevertheless, regarding the opined handling limitation, the undersigned finds that a frequent right (dominant) hand handling restriction is more appropriate than the opined occasional restriction, as not only should the claimant's upper extremity problems continue to improve as she recovers from her cervical and lumbar surgeries, but she had findings of relatively intact extremity strength in the more recent examinations. Of note, during the hearing, the claimant testified that she was currently able to do most personal care tasks with just some help needed from her sister regarding bathing. Although she reported that she had to walk with a walker, she acknowledged that she was still healing from her back surgery, and that her doctors informed her that everything looked good with the follow-up x-rays. Nonetheless, use of a walker suggests somewhat intact handling and remaining manipulative abilities. In addition, testimony from the claimant shows that she drives 20 times each week, which involves considerable manipulative actions. (See e.g., Exhibit(s) 2F/2-7, 3F/62-63, 6F/8/21/25/33-34, 7F/3-4/11/31/34, 10F/399/469-473/480-481/523/528-536/627-629/641-642/650-651/657-659/677; Hearing Testimony).

CAR 29-30.

According to Plaintiff, the "RFC assessment is not supported by substantial medical evidence, as the non-evaluating physician [Dr. Ruo] upon whom the ALJ relied to formulate his RFC assessment, had failed to review 700 pages of pertinent medical records, including surgical reports." ECF No. 11, pg. 6. Plaintiff adds:

Dr. Y. Ruo, the non-examining State agency medical consultant, upon whom ALJ Misenti relied, reviewed Plaintiff's medical file on April 26, 2022, at which time Dr. Y Ruo, based on the evidence then of record, identified a Residual Functional Capacity which was the equivalent of light work. (A.R. 99-103).

Dr. Ruo (A.R. 99-103) never had the benefit of reviewing any of
Plaintiff's medical file regarding treatment post April 26, 2022.

The medical file post April 26, 2022, included over 700 pages of
treatment records, and included documentation of Plaintiff's surgical
procedures to her cervical spine and lumbar spine (A.R. 1163-1865).

It is Plaintiff's position that review of those records is required for
Plaintiff's Residual Functional Capacity to be accurately addressed.

* * *

Plaintiff asks that the court consider the issue at hand, which is that
as of Dr. Ruo's report in April 2022, she was considered to have an RFC
the equivalent of Light Work, and that despite having a cervical
and lumbar fusion only five months later her RFC stayed the same.

ECF No. 11, pgs. 7, 11.

Plaintiff also contends that the ALJ's evaluation of Dr. Ruo's opinion is flawed

because it is "inconsistent with . . . contemporaneous medical evidence from April 2022." Id. at

9.

1.    Review of Medical Records

At the outset, the Court finds Plaintiff's argument somewhat puzzling. Two

doctors opined as to Plaintiff's physical limitations – Drs. Bawa and Ruo. Dr. Bawa did not

include any limitations with respect to environmental limitations, where as Dr. Ruo did. Thus,

Dr. Ruo's opinion, which Plaintiff challenges, is more favorable to Plaintiff. Nonetheless, it

appears Plaintiff argues the ALJ erred in relying on Dr. Ruo's opinion because the opinion would

have been even more favorable but for the lack of review of 700 pages of medical records post-

dating the doctor's review of the file in April 2022.

Though Plaintiff argues Dr. Ruo failed to consider over 700 pages of records,

Plaintiff's brief only cites two specific pages. According to Plaintiff, Dr. Ruo's April 2022

opinion did not account for reports from Dr. Azeem Oladunjoye, Plaintiff's surgeon, dated

September 3, 2022, and October 17, 2022. See ECF No. 11, pg. 8. These reports are found in the

record at CAR 533 and CAR 402, respectively. These reports describe surgical procedures

performed on Plaintiff after Dr. Ruo's assessment. See id. The reports do not indicate any

complications and do not describe Plaintiff's functional capabilities. See id. As such, they would

have had no bearing on Dr. Ruo's assessment. Moreover, as the ALJ noted, the surgical

9

1   procedures described in these reports both occurred less than one year prior to the ALJ's decision

2   and could not have established any disability for the required 12-month continuous period.

3   Finally, to the extent Plaintiff believes that the surgeries performed by Dr. Oladunjoye

4   exacerbated her condition and undermined her functional capacity, she has not met her initial

5   burden by presenting evidence to that effect.  The Court also notes that the ALJ accounted for

6   post-surgery recovery by including additional restrictions on handling.

7             2.        Contemporaneous Medical Evidence from April 2022

8             Plaintiff contends that Dr. Ruo's April 2022 opinions are inconsistent with

9   contemporaneous medical evidence from Drs. Gellman, Dowbak, Goyal, Hedayat, and

10  Oladunjoye.  See ECF No. 11, pgs. 9-10.  The records identified by Plaintiff consist of doctors'

11  reports issued between July 2021 and early April 2022.  See id.  As such, these records would

12  have been available to Dr. Ruo at the time he prepared his report in late April 2022.

13            Plaintiff first cites a July 26, 2021, report from Dr. John Dowbak.  See CAR 738.

14  The excerpt of the report noted in Plaintiff's brief described Plaintiff's subjective complaints to

15  Dr. Dowbak and the doctor's plan for an MRI exam and further evaluation by a specialist.  See id.

16  Next, Plaintiff cites two reports from Dr. Goyal – a December 8, 2021, report, CAR 980, and a

17  January 6, 2022, report, CAR 976.  As with Dr. Dowbak's reports, these documents reflect the

18  doctor's notes on Plaintiff's subjective complaints.  See id.  Plaintiff next references a March 21,

19  2022, report from Dr. Oladunjoye.  See CAR 1120-21.  In this document, Dr. Oladunjoye notes

20  his review of MRI results with Plaintiff, as well as Plaintiff's subjective complaints prior to

21  surgery performed later in 2022.  See id.  Next, Plaintiff cites an April 5, 2022, report from Dr.

22  Hedayat.  See CAR 1097, 1107.  As with the other reports cited by Plaintiff, Dr. Hedayat's report

23  describes subjective complaints.  See id.  Finally, Plaintiff references an April 6, 2022, report

24  from Dr. Gellman.  See CAR 1091.  In this report, Dr. Gellman outlines Plaintiff's subjective

25  complaints and plans for further treatment.  See id.

26  / / /

27  / / /

28  / / /

1    The Court does not agree that these records are inconsistent with Dr. Ruo's

2    opinions.  Indeed, none of the reports cited by Plaintiff as inconsistent offer any opinions as to

3    Plaintiff's functional capacity.  As noted above, each of the reports merely outlines Plaintiff's

4    subjective complaints at the time.

5           **B.**      **<u>Plaintiff's Subjective Statements and Testimony</u>**

6    The Commissioner determines the weight to be given to a claimant's own

7    statements and testimony, and the court defers to the Commissioner's discretion if the

8    Commissioner used the proper process and provided proper reasons.  <u>See Saelee v. Chater</u>, 94

9    F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

10   <u>See Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

11   <u>See Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

12   what testimony is not afforded weight and what evidence undermines the testimony.  <u>See id.</u>

13   Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

14   reasons for rejecting testimony as not credible must be "clear and convincing."  <u>See id.</u>; <u>see also</u>

15   <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>,

16   504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

17   If there is objective medical evidence of an underlying impairment, the

18   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

19   because they are unsupported by objective medical evidence.  <u>See Bunnell v. Sullivan</u>, 947 F.2d

20   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

21           The claimant need not produce objective medical evidence of the
      [symptom] itself, or the severity thereof.  Nor must the claimant produce

22   objective medical evidence of the causal relationship between the
      medically determinable impairment and the symptom.  By requiring that

23   the medical impairment "could reasonably be expected to produce" pain or
      another symptom, the <u>Cotton</u> test requires only that the causal relationship

24   be a reasonable inference, not a medically proven phenomenon.

25   80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
      <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

26

27   / / /

28   / / /

11

1    The Commissioner may, however, consider the nature of the symptoms alleged,

2    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3    947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

4    also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

5    inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

6    follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

7    (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9    claimant cooperated during physical examinations or provided conflicting statements concerning

10    drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11    claimant testifies as to symptoms greater than would normally be produced by a given

12    impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14    Regarding reliance on a claimant's daily activities to discount testimony of

15    disabling pain, the Social Security Act does not require that disability claimants be utterly

16    incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

17    repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

18    does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

19    Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

20    Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

21    claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

22    restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

23    claimant was entitled to benefits based on constant leg and back pain despite the claimant's

24    ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

25    activities are not easily transferable to what may be the more grueling environment of the

26    workplace, where it might be impossible to periodically rest or take medication").   Daily

27    activities must be such that they show that the claimant is ". . .able to spend a substantial part of

28    his day engaged in pursuits involving the performance of physical functions that are transferable

12

1   to a work setting." <u>Fair</u>, 885 F.2d at 603.  The ALJ must make specific findings in this regard

2   before relying on daily activities to discount a claimant's pain testimony.  See <u>Burch v. Barnhart</u>,

3   400 F.3d 676, 681 (9th Cir. 2005).

4   At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony.  <u>See</u>

5   CAR 23-28.  The ALJ summarized Plaintiff's statements and testimony as follows:

6   The claimant alleged a disability based on physical and mental
    impairments. Only some physical impairments are severe, and no mental

7   impairments are severe. With respect to the severe physical impairments,
    the claimant stated that she experienced various bodily pains, especially

8   with respect to her neck, back, right upper extremity, knees, and left ankle.
    She mentioned that she had a history of both conservative and invasive

9   treatment, including several surgeries. For instance, she reported that she
    underwent surgery to her left ankle in September 2021, as well as

10  relatively recent surgery to her cervical and lumbar spine in September
    2022, with wound care surgery to her back in October 2022. She also

11  reported having right ankle surgery in the distant past. She asserted that
    she had pain and neuropathy in her right hand and arm, and that she was

12  right hand dominant. She stated that her back pain radiated to her lower
    extremities, and that she had nerve damage (numbness sensations)

13  regarding her lower extremities. She reported that she had to use a
    wheelchair at times, especially after her surgeries, and there were periods

14  where she could not walk, at least without assistance. She asserted that she
    could not stand for more than 5-20 minutes. She indicated that she was

15  limited in various degrees in performing some of her activities of daily
    living over the course of the period at issue. She stated that there were

16  periods where she could not take a bath or shower on her own. She
    mentioned having difficulty cooking and cleaning around the house. She

17  asserted that she needed a knee replacement on her right knee, needed a
    repeat surgery for her left ankle in the future, and needed a future surgery

18  for her right ankle. She mentioned that her pains interfered with her sleep.
    She stated that she had difficulty writing due to right hand symptoms, and

19  she had to have her sister write things for her, such as the Function Report.
    She indicated that she had difficulty holding utensils. She asserted that she

20  had pain with reaching. She mentioned that she could lift 10 pounds. She
    testified during the hearing that she considered her recovery from back

21  surgery to be her biggest current medical problem, but that she stopped
    working around mid-2021 due to her left ankle problems, with a need to

22  undergo left ankle surgery in September 2021. She stated that she still had
    difficulties with her left ankle. She also endorsed having current knee and

23  right-hand problems, and she reiterated a need for a future right knee
    replacement and future right and left ankle surgeries. She stated that her

24  back was still sore from her latest surgery, and that she still had numbness
    from the waist down, as well as incontinence issues. Nonetheless, she

25  mentioned that based on the most recent imaging, her doctor stated that
    her back looked good and was in the process of healing. However, she

26  indicated that her right knee was sideways. She also stated that her left
    ankle was crooked to the left after surgery and needs to be fixed. (See e.g.,

27  Exhibit(s) 2E, 6E, 10E, 11E, 13E, 14E, 16E; Hearing Testimony).

28  CAR 24-25.

13

1    The ALJ concluded generally as follows:

2
3    After careful consideration of the evidence, the undersigned finds that the
     claimant's medically determinable impairments could reasonably be
     expected to cause the alleged symptoms; however, the claimant's
4    statements concerning the intensity, persistence and limiting effects of
     these symptoms are not entirely consistent with the medical evidence and
5    other evidence in the record for the reasons explained in this decision.
     Specifically, the claimant's activities of daily living do not fully support
6    the subjective complaints made by the claimant. For example, the claimant
     stated that she could prepare at least simple meals. She reported that she
7    spent time watching television, which is an activity that requires some
     degree of intact concentration and manipulative ability. She asserted that
8    she did some household chores, like laundry and running the dishwasher.
     She indicated that she drove a car; at the hearing she stated that she drove
9    20 times a week. She reported that she went shopping, online and
     sometimes in-store. Although she endorsed significant right-hand
10   symptoms, she also mentioned that she used a walker. She testified that
     she was currently able to do most personal care tasks. (See e.g., Exhibit(s)
11   6E; Hearing Testimony). The above do not fully support the claimant's
     allegations of disability. Further, the objective medical record does not
12   support the alleged severity of the claimant's impairments. The medical
     evidence shows that the claimant's conditions did not cause the claimant
13   to be as limited as alleged by the claimant. These matters are discussed
     below [in the hearing decision].

14   CAR 25.

15   The ALJ continued by discussing Plaintiff's specific statements and testimony

16   regarding musculoskeletal and neurological issues in the context of the objective medical

17   evidence.  See id. at 25-28.  The ALJ began this discussion as follows:

18   In turning to the medical records, the evidence shows that the claimant had
     a long history of dealing with musculoskeletal/neurological problems.
19   Within the period under review, the most noteworthy impairments related
     to cervical and lumbar degenerative disc disease, right upper extremity
20   radial nerve palsy, right knee and left ankle misalignment, and
     degenerative joint disease in both knees. Her treatment has been both
21   conservative and invasive in nature. She has had oral pain medication and
     physical therapy treatments, as well as surgeries. Prior to the alleged onset
22   date, she broke her right ankle in the distant past, and required surgeries in
     2015 (See e.g., Exhibit(s) 10F/13). Within the period under review, she
23   underwent left ankle surgery in September 2021, cervical and lumbar
     spine fusion surgery in September 2022, and lumbar wound care surgery
24   in October 2022 (See e.g., Exhibit(s) 10F/350-352/480-481/532-535).
     Nonetheless, she appeared to have objectively recovered well from her
25   surgeries within the period at issue, or at least was on a path to recovering
     well, especially with reduced/no substance abuse, and better treatment
26   compliance in general. Overall, the claimant was not objectively
     demonstrated to have substantial problems in physical functioning when
27   considering the full period at issue, though she certainly had some deficits,
     but many improved with treatment.
28

14

1    CAR 25.

2    The ALJ then provided a detailed and lengthy discussion of the medical record

3    related to left ankle problems, see id. at 25-26, neck, back, and right upper extremity problems,

4    see id. at 26-27, knee problems, see id. at 28, and obesity, see id., which is not reproduced here.

5    The Court agrees with Plaintiff that the ALJ's analysis of Plaintiff's subjective

6    complaints is flawed.  First, as to inconsistency with the objective evidence, a review of the ALJ's

7    decision reflects that, while the objective evidence is thoroughly summarized, the ALJ did not

8    provide a clear link between a specific piece of objective evidence found to contradict specific

9    testimony.  Second, as to the ALJ's reliance on Plaintiff's activities of daily living, the Court

10   finds that the activities described by the ALJ, do not necessarily indicate Plaintiff's ability to

11   sustain full-time work-related activity.  Notably, Plaintiff stated that she could not bathe on her

12   own, had difficulty writing, had difficulty cooking, and that she could not walk at all at time or

13   stand more than 5-20 minutes.  These limited activities do not translate to the ability to perform

14   full-time competitive work.  The matter will be remanded to allow for further evaluation of

15   Plaintiff's subjective complaints.

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

2                                    **IV.  CONCLUSION**

3              For the foregoing reasons, this matter will be remanded under sentence four of 42

4    U.S.C. § 405(g) for further development of the record and/or further findings addressing the

5    deficiencies noted above.

6              Accordingly, IT IS HEREBY ORDERED that:

7              1.       Plaintiff's motion for summary judgment, ECF No. 11, is granted;

8              2.       Defendant's motion for summary judgment, ECF No. 12, is denied;

9              3.       The Commissioner's final decision is reversed and this matter is remanded

10   for further proceedings consistent with this order; and

11             4.       The Clerk of the Court is directed to enter judgment and close this file.

12

13   Dated:  March 5, 2025

14                                                    _____
                                                      DENNIS M. COTA
15                                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                 16